THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIJUAN MOORE, Defendant-Appellant.

Fourth District   No. 4—88—0279

Opinion filed October 5, 1989.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

The defendant, Tijuan Moore, was convicted of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)) after a jury trial in the circuit court of Champaign County. The circuit court then entered judgment and sentenced the defendant to a 40-year term of imprisonment. The defendant now appeals his conviction and sentence. We affirm.

The following evidence was presented at trial.

Anthony Newbern (Newbern), the homicide victim, worked as a produce clerk at Richard's Food Store in Champaign, Illinois. Shortly after 7 a.m. on October 3, 1987, a black man entered the store and shot Newbern in the back as he stood working in the produce department. Newbern died in surgery later that same day.

To establish the identity of the defendant as that gunman, the prosecution called several store employees to testify as occurrence witnesses at trial.

Pamela Harper (Harper), a store cashier, testified an unknown black man had been her sole customer immediately before the shoot-

ing incident. She did not pay close attention to the man during this brief transaction. Harper later realized that customer had been the gunman. She provided the police with a rough description. Harper could not thereafter identify the defendant as the gunman in lineup.

Robert Gullion (Gullion), the assistant manager, testified he saw the gunman shoot Newbern in the back as Newbern stood working in the produce department of the store. He provided the police with a detailed description and later identified the defendant as the gunman in lineup and in court.

The prosecution next called several witnesses to testify to the hostile relationship between the defendant and Newbern.

Rosie Slaughter, the girlfriend of Newbern, testified she witnessed a fight between these two men six days before the shooting incident. In that fight, the defendant, aided by several of his associates, stabbed Newbern in the back with a small knife.

Vicki Phagan (Phagan), a former girlfriend of the defendant, testified, over the objection of the defense, that the defendant and Newbern had each made threats against the other man. Phagan testified she overheard the defendant and his associates threaten to harm Newbern approximately two weeks before the shooting incident. She also testified Newbern had threatened to vandalize her trailer in retaliation against the defendant on the day before the shooting incident.

Sheila Harvey (Harvey), the former girlfriend of the employer of the defendant, testified she overheard these two men discuss Newbern on several occasions. She heard the defendant threaten to harm Newbern on the day before the shooting incident. Harvey later heard the defendant accept a compliment for his role in the murder of Newbern.

The defendant took the stand on his own behalf. He denied taking part in any actual or threatened criminal conduct against Newbern. As an alibi, the defendant testified he had been living in another town for almost a week at the time of the shooting incident. He contended Gullion was mistaken in his identification. Several associates of the defendant later corroborated his alibi testimony.

The prosecution then called Danny Williams (Williams) to testify as a rebuttal witness. Williams, a long-time friend of Newbern, testified he saw the defendant and several of his associates at Richard's Food Store two days before the shooting incident.

As a preliminary matter, we address the merits of a motion to strike that was ordered to be taken with this case on appeal.

In contrast to his strategy at trial, the defense now attempts to discredit the identification testimony of the witnesses for the prosecu-

tion on a scientific basis. To that end, the defense cites both legal and psychological authority as to the fallibility of eyewitness identifications in his brief on appeal.

■ In Illinois, the trustworthiness of eyewitness identifications is a matter resting within the province of the jury. For this reason, scientific evidence is not admitted to discredit the testimony of a witness. (*People v. Perruquet* (1983), 118 Ill. App. 3d 339, 344, 454 N.E.2d 1051, 1055; see also *People v. Brown* (1981), 100 Ill. App. 3d 57, 71-72, 426 N.E.2d 575, 584-85; *People v. Clark* (1984), 124 Ill. App. 3d 14, 21-22, 463 N.E.2d 981, 987.) At the same time, we view the inclusion of such authorities in the brief permissible, and deny the prosecution's motion to strike.

Relying on *People v. Outlaw* (1978), 67 Ill. App. 3d 327, 384 N.E.2d 898, the defendant initially contends the circuit court erred in refusing to allow him to impeach Gullion with evidence Harper had misidentified him in a corporeal lineup.

In *Outlaw*, a case involving the prosecution for aggravated battery and attempt (murder) of a police officer, the circuit court precluded the defense from calling eyewitnesses who would have testified they were unable to identify the defendant as the assailant in a lineup. On review, the appellate court remanded the case for a new trial. The appellate court reasoned the circuit court had improperly excluded relevant evidence in the case as the testimony of those witnesses who were unable to identify the defendant reflected adversely on the credibility of the witnesses who made a positive identification. *Outlaw*, 67 Ill. App. 3d at 331, 384 N.E.2d at 901-02.

■ The circuit court did not err in excluding testimony to the effect Harper tentatively misidentified a man other than the defendant as the gunman in a lineup. Such testimony would not exculpate the defendant. It is undisputed that that man could not have committed this offense as he was already in police custody at the time of the shooting incident. Instead, the introduction of this testimony would only have created needless speculation in the minds of the jurors that an as yet unknown man shot Newbern. (*People v. Welch* (1961), 22 Ill. 2d 558, 177 N.E.2d 160; *People v. James* (1979), 70 Ill. App. 3d 629, 388 N.E.2d 221.) The circuit court did not abuse its discretion in excluding the misidentification testimony from the consideration of the jury.

■ The testimony of a single credible eyewitness is sufficient to sustain a conviction. To do so, however, it must be clearly established the witness identified the defendant under circumstances permitting a positive identification. *People v. Manion* (1977), 67 Ill. 2d 564, 578,

367 N.E.2d 1313, 1320.

Gullion was a credible identification witness for the prosecution. Gullion had a superior opportunity to observe the gunman throughout the entirety of the shooting incident. He watched the gunman approach, shoot at Newbern, and leave the grocery store. He then provided the police with a reasonably accurate description as to the innate physical characteristics of the gunman. After noting minor cosmetic changes in appearance, Gullion immediately identified the defendant as the gunman at a lineup later in the month. (*People v. Townes* (1985), 130 Ill. App. 3d 844, 850-51, 474 N.E.2d 1334, 1338-39.) We find the testimony of this eyewitness sufficient to sustain the conviction of the defendant.

The defendant also contends the circuit court erred in admitting evidence Newbern threatened the girlfriend of the defendant.

At trial, the prosecution called Phagan, the former girlfriend of the defendant, to testify as a motive witness against the defendant. She testified Newbern threatened to vandalize her trailer to retaliate against the defendant for his role in an earlier stabbing incident. Phagan went on to testify she in turn informed only members of her immediate family about this threat. Her testimony was later corroborated by two witnesses who had accidentally overheard part of the exchange between Phagan and Newbern on the day before the shooting incident.

The defense unsuccessfully argued this testimony was irrelevant to show any motive on the part of the defendant to shoot Newbern. Its argument rested on the failure of the prosecution to establish direct communication of this threat to the defendant. The prosecution responded to this argument with circumstantial evidence as to the existence of a "rumor grapevine" within the confines of the trailer park community.

The test of the admissibility of evidence is whether it is relevant to prove the offense charged in the case. "Relevancy is established where [the evidence] offered tends to prove a fact in controversy or renders a matter in issue more or less probable." (*Marut v. Costello* (1966), 34 Ill. 2d 125, 128, 214 N.E.2d 768, 769.) Thus, evidence which even slightly tends to show that the defendant had a motive to kill the victim is relevant in a murder case. *People v. Gougas* (1951), 410 Ill. 235, 238-39, 102 N.E.2d 152, 154.

We believe the jury could reasonably infer that the defendant had been informed of the threat against his girlfriend. This inference may be drawn from the fact the defendant had again been heard to threaten Newbern later that same day. Absent such information, the

defendant had no reason to continue his threats against Newbern since he had been the one who prevailed in the earlier stabbing incident. Further, the inference to be drawn from the evidence of a "rumor grapevine" in the community was of some value. (See *People v. Jones* (1982), 108 Ill. App. 3d 880, 884-85, 439 N.E.2d 1011, 1015-16.) The circuit court did not abuse its discretion in admitting this evidence on the motive of the defendant.

The defendant next contends the circuit court unreasonably restricted his attempt to impeach Williams on cross-examination.

The prosecution called Williams as a rebuttal witness at trial. As a preliminary matter, the prosecution established that Williams had a felony charge pending against him. The prosecution also established that Williams had not received any promise of leniency in that disposition for his testimony in the instant action. Williams then testified he saw the defendant and several of his associates at the grocery store where Newbern was then working two days before the shooting incident. This testimony, to the extent credible to the jury, discredited the alibi of the defendant.

The defense sought to impeach Williams on cross-examination by showing he was prejudiced against the defendant. To this end, the defense attempted to question Williams about the criminal conduct underlying the felony charge pending against him. Williams did not confirm the posited criminal conduct. The defense thereafter unsuccessfully moved to reopen its case to present evidence that the felony charge pending against Williams arose on criminal conduct against the girlfriend of the defendant.

Although the defendant premises his argument on constitutional grounds (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8; see also *Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065; *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116), we need only address the evidentiary principles of impeachment to decide this issue.

In general, the defendant is allowed wide latitude on cross-examination to attempt impeachment of any witness testifying against him. (*People v. Mason* (1963), 28 Ill. 2d 396, 403, 192 N.E.2d 835, 838-39.) Showing bias, interest, or other improper motive on the part of a witness is an accepted method of impeachment. (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 452, 389 N.E.2d 1382, 1389.) Thus, cross-examination for such impeachment is a matter of right, subject to the discretion of the circuit court to reasonably limit inquiry to a proper subject matter. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 89 L. Ed. 2d

674, 683, 106 S. Ct. 1431, 1435.

■ Our review of the record indicates the circuit court allowed the defense sufficient latitude in its attempt to impeach Williams on cross-examination. The jury was well-informed of the potential for bias on the part of Williams. First, the jury knew Williams had been charged with a felony. Second, the jury knew Williams was an associate of the victim and bore animosity toward the defendant. It is apparent, given the potential risk of self-incrimination, Williams would not voluntarily confirm any evidence about his alleged criminal conduct upon further inquiry. (See *People v. Roberson* (1964), 30 Ill. 2d 168, 195 N.E.2d 722; *People v. Nally* (1985), 134 Ill. App. 3d 865, 869-70, 480 N.E.2d 1373, 1377.) Such inquiry would have invited an unnecessary "minitrial" on the felony charge pending against Williams. Under these circumstances, the defendant did not show sufficient reason for the circuit court to reopen its case. *People v. Shore* (1984), 129 Ill. App. 3d 443, 458, 472 N.E.2d 512, 521.

The defendant further contends the circuit court erred in allowing Phagan to testify she overheard part of a conversation between the defendant and his associates wherein they threatened to harm Newbern.

The testimony at issue appears in the record as follows:

"Q. [Prosecution]: What did you hear? What conversation did you hear in that meeting?

A. [Witness]: That Andy Brown and Tony [Newbern] had crossed them and they had to be taken care of.

Q. What were they—did they state how they were going to be taken care of?

A. No.

Q. Do you recall what words they used?

A. Just taken care of.

Q. Was [Tijuan Moore] participating in that conversation?

A. Yes.

Q. And was Roy Taylor participating in that conversation?

A. Yes."

The defense argues this testimony constitutes inadmissible hearsay. The prosecution contends this testimony constitutes admissible nonhearsay as implied admissions of the defendant. We agree with the argument of the prosecution.

■ An implied admission arises from circumstances where the defendant voluntarily chooses not to object to a statement implicating him in criminal conduct. (*People v. McCain* (1963), 29 Ill. 2d 132, 135, 193 N.E.2d 784, 786.) Such an admission is treated as an exception to

the rule against hearsay. (*People v. Newbury* (1972), 53 Ill. 2d 228, 234, 290 N.E.2d 592, 596.) The underlying rationale for this treatment is that an innocent party would affirmatively object to all incriminating statements. *McCain*, 29 Ill. 2d at 135, 193 N.E.2d at 786.

██ The jury could properly determine from the evidence that the defendant concurred in the threat against Newbern. (See *People v. Bush* (1963), 29 Ill. 2d 367, 372, 194 N.E.2d 308, 311-12.) Phagan testified the defendant and his associates held a meeting in the living room of her trailer approximately two weeks before the shooting incident. Although they attempted to exclude her from this meeting, Phagan overheard part of their conversation about Newbern. Phagan further identified the defendant as an active participant in this conversation. This conversation, given its threat of harm to Newbern, would be immediately objected to by an innocent party. The circuit court did not err in allowing this testimony.

The defendant last contends the circuit court did not accord adequate weight to his potential for rehabilitation in imposing sentence.

██ Illinois incorporates the rehabilitative potential of the accused as a factor in prescribing penalties. (See Ill. Const. 1970, art. I, §11; Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—2.) This factor is not, however, entitled to any greater weight than the remaining factors. (*People v. Gaines* (1981), 88 Ill. 2d 342, 382, 430 N.E.2d 1046, 1066; *People v. Reid* (1987), 160 Ill. App. 3d 491, 493, 513 N.E.2d 517, 518.) The circuit court may, in its discretion, determine and impose the sentence on the defendant in excess of the minimum provided by statute.

The circuit court sentenced the defendant to a 40-year term of imprisonment for the offense of murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).) Murder is a felony offense. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a).) A sentence of imprisonment for this offense shall be not less than 20 years nor more than 40 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(a).) The sentence imposed is within the maximum limits of the penalty statute.

██ The appellate court is empowered to reduce sentences imposed by the circuit court through Supreme Court Rule 615(b)(4). (107 Ill. 2d R. 615(b)(4).) This power will be used only where the circuit court has abused its discretion in the determination and imposition of sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) "[A]n abuse will be found to exist if the sentence imposed is at variance with the spirit and purpose of the law, or greatly disproportionate to the nature of the crime." *People v. Reznick* (1986), 141 Ill. App. 3d 593, 597, 491 N.E.2d 444, 446.

The record indicates the circuit court exercised informed discretion in sentencing the defendant. The circuit court considered the mitigating factors offered by the defense. The defendant, age 27, was a high school dropout with a sporadic employment history. He had no prior criminal record. The circuit court also considered the aggravating factors offered by the prosecution. The defendant had a preexisting hostile relationship with Newbern which culminated in the cold-blooded premeditated execution of an unarmed man in public. After carefully weighing both sets of factors, the circuit court sentenced the defendant to the maximum term of imprisonment allowed by statute. The circuit court did not abuse its discretion in sentencing the defendant. See *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 824-25, 502 N.E.2d 422, 426-27.

The judgment and sentence of the circuit court of Champaign County are affirmed.

Affirmed.

SPITZ and GREEN, JJ., concur.