THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDRES MALDONADO, Defendant-Appellant.

First District (3rd Division)   No. 1—88—3151

Opinion filed December 30, 1992.—Rehearings denied February 5, 1993, and February 18, 1993.

Rita A. Fry, Public Defender, of Chicago (Beth I. Solomon and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Andrea Bonin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant, Andres Maldonado, was convicted of first degree murder for the shooting death of 18-year-old Elizabeth Cooley and was sentenced to 40 years' imprisonment.

On appeal, defendant raises five issues as error: (1) the admission of testimony and argument regarding defendant's gang affiliation; (2) the admission of testimony regarding a rifle, shells, and shoulder holster found in a gym bag which also contained the gun that apparently killed Elizabeth Cooley and allowing such items to be published to the jury; (3) the refusal to give defendant's tendered instruction on involuntary manslaughter; (4) certain comments made by the State during closing arguments; and (5) the imposition of the maximum 40-year term of imprisonment.

For the reasons which follow, we affirm defendant's conviction but reduce his sentence to a 20-year term of imprisonment.

The occurrence witnesses who testified at trial recounted substantially the same sequence of events which resulted in the fatal shooting of Elizabeth Cooley. Defendant did not testify.

About 7 or 8 p.m. on the evening of December 8, 1986, five individuals were riding in a Chevy station wagon: Stanley Cherry (a back seat passenger), Allen Oliver (a back seat passenger), Elizabeth Cooley (the victim, who was sleeping in the middle of the back seat), Norman Abrams (the front seat passenger), and Lamonte Haywood (the driver).

Stanley Cherry testified that as they drove down the street, they encountered Efrain Nunez standing in the street. Lamonte Haywood, the driver of the car, honked his horn and ordered Efrain to move. Efrain then hit the roof of the car with his hand. Stanley got out of the car and asked Efrain Nunez why he was hitting the car. Stanley testified that Efrain "went to hollering it's some Latin Kings or something." Allen Oliver also exited the car and joined Stanley in the argument against Efrain and two other men who, according to Stanley's testimony, "showed up from nowhere" until "the street was full of what they call Latin Kings or whatever." The two other men were later identified by Efrain Nunez as his brother Gabriel Nunez and Tony Gonzalez.

Efrain Nunez testified that the station wagon driven by Haywood almost hit him as he was crossing the street; angered, he banged his fist on the roof of the car. Then "two colored guys got out of the car" and exchanged epithets with him.

Another car then appeared at the scene, carrying three men identified as defendant, Enrique Rivera, and Felix Lopez, who joined in the altercation on Efrain's behalf. Stanley estimated that the group which gathered against him and Allen Oliver numbered about 10 and "they was all hollering Latin Kings and kill them niggers."

Enrique Rivera kicked out the window on the driver's side of the station wagon. Defendant walked up to Stanley Cherry with a pistol, shoved the gun in Stanley's face, and said "nigger, I kill you." Stanley backed up a little, and defendant fired a shot toward the station wagon. Stanley and Allen began to run down the sidewalk when Stanley heard defendant say "kill them niggers." Haywood began to drive away, and defendant then fired more gunshots at the station wagon. Three to seven gunshots were heard by the various occurrence witnesses. According to the witnesses' testimony, no one except defendant had a gun.

At the corner, Haywood stopped for a stoplight and Stanley and Allen entered the car. After noticing that Elizabeth was bleeding, they drove to Walther Memorial Hospital, where she later died.

After the shooting, Efrain and his group (brother Gabriel, Tony Gonzalez, Felix Lopez, and defendant) went to Efrain's apartment, where Efrain had a rifle and ammunition stored in a blue gym bag. Efrain gave Felix Lopez the gym bag with those items included. Also at Efrain's apartment, defendant gave his gun to Felix Lopez, who in turn put it into the blue gym bag. Thereafter, the blue gym bag containing defendant's gun and Efrain's rifle and ammunition was passed from Felix to his sister Maria Lopez to Gabriel Nunez to Amelia Herrera. The police eventually recovered the blue gym bag and its contents at the residence of Amelia Herrera.

The trial court denied defendant's request for an involuntary manslaughter instruction. Defendant was found guilty of first degree murder and sentenced to 40 years in prison.

On appeal, defendant asserts that some, but not all, testimony and argument regarding the Latin Kings street gang was improperly admitted and that such evidence was irrelevant to the issues at trial and was highly prejudicial. Defendant cites four references to the Latin Kings street gang which he believes improper.

First, defendant contests a remark made by the State in its opening statement which identified defendant as a member of the Latin Kings gang.

According to the record, in recounting the events leading to the shooting, the State commented that during the initial confrontation, another car pulled up and

> "three people got out of that car, a man by the name of Enrique Rivera, a man by the name of Felix Lopez and one other man. That man [referring to defendant] is known on the streets as Polocko, he's a member of the Latin Kings street gang."

Defense counsel's objection at this point was overruled.

The second gang-related reference to which defendant objects occurred during the State's direct examination of Efrain Nunez where testimony was elicited that although the witness did not know defendant personally, he knew him from "the streets" because they both belonged to the Latin Kings.

The State contends that the reference to defendant's gang affiliation in the State's opening remarks and in the direct examination of Efrain Nunez was relevant to the identification of defendant, to placing him at the scene, and to provide a motive as to why he would stop to join Efrain Nunez during the confrontation.

Gang-related evidence may be admitted if it is otherwise relevant and admissible. *People v. Gonzalez* (1991), 142 Ill. 2d 481, 489, 568 N.E.2d 864.

Evidence of gang membership is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (*People v. Lucas* (1992), 151 Ill. 2d 461, 480; *Gonzalez*, 142 Ill. 2d at 487-88.) However, even relevant evidence may be excluded where its prejudicial impact substantially outweighs its probative value. *People v. Eyler* (1989), 133 Ill. 2d 173, 218, 549 N.E.2d 268.

Evidence of gang membership is also admissible to provide a motive for an otherwise inexplicable act where there is sufficient proof that such membership is related to the crime charged. (*People v. Smith* (1990), 141 Ill. 2d 40, 58, 565 N.E.2d 900.) However, to be deemed competent, such evidence must, at least to a slight degree, tend to establish the existence of the motive relied upon or alleged and it must be shown that the defendant knew of those facts. *People v. Easley* (1992), 148 Ill. 2d 281, 326, 592 N.E.2d 1036, quoting *Smith*, 141 Ill. 2d at 56.

■ In the present case, we find that the identification of defendant as a member of the Latin Kings by the State in its opening statement and by Efrain Nunez in his testimony was improper.

The State failed to link defendant's status as a gang member to the offense charged. In fact, the exact opposite conclusion was established when Efrain Nunez testified that the shooting was not gang related.

Courts have consistently acknowledged that prejudice automatically attaches to the disclosure of an accused's affiliation with a street gang. Notwithstanding the prejudice, a defendant cannot insulate the jury from his gang membership if such status is relevant to the determination of the case. *Gonzalez*, 142 Ill. 2d at 489, quoting *People v. Rivera* (1986), 145 Ill. App. 3d 609, 618, 495 N.E.2d 1088.

To be admissible, sufficient proof must exist to show that membership is related to the crime charged, *e.g.*, to show common design or purpose. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840.) The purpose of this requirement is to insure that the accused is not convicted merely because of his membership in an organization that is unpopular. *Hairston*, 46 Ill. 2d at 372.

We find further support for our holding in two recent supreme court cases which concerned the murder of a superintendent at the Pontiac Correctional Center by two inmates, Roosevelt Lucas and Ike Easley. (*Lucas*, 151 Ill. 2d 461; *Easley*, 148 Ill. 2d 281, 592 N.E.2d 1036.) The facts provided in these two cases establish that defendant Easley first stabbed the victim and defendant Lucas then proceeded to beat the victim about his head with a piece of pipe. Both Lucas and Easley were members of the Black Gangster Disciples gang. In their separate trials, the State presented certain evidence of their affiliation with the gang to support its theory that Lucas and Easley murdered the victim in retaliation for the death of another inmate who was a member of the Black Gangster Disciples.

In *Easley*, the supreme court held that the evidence relating to gangs was improperly admitted because it was irrelevant and highly prejudicial. (*Easley*, 148 Ill. 2d at 324-30.) In contrast, in *Lucas*, the supreme court found that the gang-related evidence was admissible because defendant Lucas, unlike defendant Easley, admitted he was a member of the gang and testimony established that defendant Lucas was aware of the plan to retaliate against the prison administration. (*Lucas*, 151 Ill. 2d at 480.) The supreme court distinguished *Easley* on the grounds that the State had there failed to demonstrate that defendant Easley had participated in and had knowledge of the gang's plan to kill a prison officer; that the only evidence which identified Easley as a gang member came from the opinion

testimony of prison officers; and that the State failed to show that Easley had been present at any gang meetings. *Lucas*, 151 Ill. 2d at 479.

Similarly, in the present case, the only evidence that defendant was a gang member came from the testimony of Efrain Nunez. However, where gang-related evidence has been properly admitted, the factual circumstances of the cases revealed substantial gang-induced involvement in the crime coupled with the accused's knowledge of those facts. See *Lucas*, 151 Ill. 2d 461; *People v. Carson* (1992), 238 Ill. App. 3d 457; *Rivera*, 145 Ill. App. 3d 609, 495 N.E.2d 1088.

Although we find that the admission of testimony and argument regarding defendant's membership in a gang was improper, such admission does not warrant reversal because there was little dispute as to the facts and competent evidence established defendant's guilt beyond a reasonable doubt. *Easley*, 148 Ill. 2d at 330; *People v. Arman* (1989), 131 Ill. 2d 115, 124, 545 N.E.2d 658; *People v. Dukes* (1986), 146 Ill. App. 3d 790, 798, 497 N.E.2d 351.

Moreover, the record contains numerous gang references which, by defendant's own admission on appeal, were not objectionable and, in fact, were often elicited by defense counsel. For example, Stanley Cherry testified that Efrain shouted "Latin Kings" when he slammed his fist on the car and that the street then suddenly became "full of what they call Latin Kings." In addition, Robert DiTusa testified that he worked as a "Gang Crimes Specialist" with the police department, that his duties were to "investigate and monitor gang crime activity," and that he, together with two other gang specialists, received the assignment of investigating the shooting of Elizabeth Cooley. DiTusa's testimony clearly implied that the victim's death was originally thought to be a gang-related matter due to the participants involved. We do not believe that a jury myopically views such information.

The third gang-related reference to which defendant objects occurred during the State's redirect examination of Efrain Nunez. After speculation raised on cross-examination as to why the witness was not initially forthcoming, Efrain testified on redirect that he did not initially tell the police about the incident because he was afraid that the Latin Kings would harm him or his family but later changed his mind because the incident "was not gang-related."

As to this testimony, the State maintains that it was proper to allow Efrain to explain why he delayed talking to the police and to rebut the inference created by defense counsel during cross-exami-

nation that Efrain had not come forward to the police sooner because he had something to hide or was lying. Additionally, the State argues that this line of questioning bears on Efrain's credibility and credibility is always relevant. (*Rivera*, 145 Ill. App. 3d at 622.) Further, the State argues that the jury clearly understood that the case was not gang related because Efrain so testified.

■ We find that the trial court did not err in admitting Efrain's testimony during redirect examination that he initially hesitated to cooperate with the police out of fear for his and his family's safety. Testimony which merely explains why a witness was initially reluctant to speak or provide information to the police is generally permissible. *People v. Felder* (1992), 224 Ill. App. 3d 744, 757, 586 N.E.2d 729.

■ The fourth instance of gang-related remarks challenged by defendant occurred during the State's closing argument. However, defendant has waived this argument for failure to specifically raise the issue in a written post-trial motion. The Illinois Supreme Court has repeatedly held and recently reaffirmed that a defendant's failure to allege the specific ground for review in a post-trial motion operates as a waiver of the right to raise the issue on review. *Lucas*, 151 Ill. 2d at 481; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Defendant next asserts that the admission and publication of certain items (a rifle, a shoulder holster, clips and ammunition) found in the blue gym bag were error because this evidence was irrelevant and prejudicial. Defendant argues that the items had no connection to defendant, the police investigation, defendant's arrest, or the death of the victim.

The State responds that the rifle was properly admitted because it was linked to the crime, having been found in the same blue gym bag in which the murder weapon was hidden, and that the items were relevant because they corroborated the testimony of Efrain Nunez, Felix Lopez, Gabriel Nunez and Detective DiTusa.

A weapon generally may not be admitted into evidence unless there is proof to connect it to the defendant and the crime or unless the defendant possessed the weapon when arrested for the crime. (*People v. Howard* (1991), 209 Ill. App. 3d 159, 178, 568 N.E.2d 56 (a revolver was held inadmissible because it was not used in the murder charged and was not confiscated from the defendant when he was arrested on the murder charge).) Even a weapon found in a defendant's possession when arrested may be admitted only if it bears a connection with the charged offense. (*People v.*

*Jackson* (1990), 195 Ill. App. 3d 104, 112, 551 N.E.2d 1025.) A sufficient nexus exists where the weapon is suitable for the crime charged although it need not have actually been used in committing the crime. *People v. Free* (1983), 94 Ill. 2d 378, 415-16, 447 N.E.2d 218; *Jackson*, 195 Ill. App. 3d at 112.

No evidence in the present case even suggests that the other contents of the blue gym bag were connected to the murder or that the rifle was similar to the handgun used in the murder. For this reason, the State's reliance on *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342, is misplaced. In *McClinton*, the court held that a rifle, similar to the shotgun used in the crime, could have been mistaken for a shotgun and thus was suitable for the crime charged.

■ Here, however, the rifle and its accessories were not linked to defendant, the shooting of the victim, or to the crime scene. Instead, the testimony revealed that defendant fired a handgun as identified by the occurrence witnesses and that the rifle and its accessories were in Efrain Nunez's house at the time of the incident.

Although it was error to admit the rifle and its accessories, in light of the overwhelming evidence against defendant, we believe that the error was harmless because his conviction would stand even absent the improper admission of the rifle and its accessories. *Howard*, 209 Ill. App. 3d at 180 (the improper introduction of a revolver did not constitute reversible error); *Jackson*, 195 Ill. App. 3d at 113-14 (the erroneous admission of a gun into evidence was held harmless).

Defendant relies solely on *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528, to further his argument that the admission of these items constitutes reversible error. However, we find *Wade* distinguishable.

In *Wade*, the fifth district found that testimony elicited from a police officer regarding a gun found on the defendant's person when he was arrested was extremely prejudicial and objectionable as evidence of other crimes admitted without justification. The gun was fully loaded and concealed in the defendant's clothing at the time of his arrest with 12 other rounds of ammunition for the gun in his pocket. The State stipulated that this gun was not the murder weapon and the murder weapon was never produced at trial.

This court has previously disagreed with the fifth district's stance in *Wade* by holding that guns or other physical items seized at the defendant's arrest are admissible as relevant to the details of

arrest. *People v. Sui Wing Eng* (1985), 138 Ill. App. 3d 281, 287-89, 485 N.E.2d 1222.

Unlike *Wade*, the rifle and other contested items in the present case were not in defendant's possession when he was arrested. Instead, the evidence revealed that defendant was not even aware of the existence of these items. The jury was aware of the trial testimony that the rifle and other contested items belonged to Efrain Nunez and were located in Efrain's residence during the commission of the crime. Felix Lopez's testimony established that he put defendant's gun into the blue gym bag, which already contained Efrain's rifle and ammunition. Moreover, the occurrence witnesses identified defendant's handgun as the weapon likely used in the murder. Given the evidence in this case, we believe that defendant could not have been unduly prejudiced by the admission of Efrain's rifle and shells.

Defendant next argues that the failure to instruct the jury on the offense of involuntary manslaughter constitutes reversible error because there was sufficient evidence to indicate that he acted recklessly in firing at the station wagon since the street was dark, it was not possible to observe anyone sitting inside the station wagon about 40 feet away, and by discharging the handgun he only intended to scare Stanley Cherry and Allen Oliver.

The State contends that the involuntary manslaughter instruction was properly refused because defendant knew the car was occupied when he fired the second and third shots since the station wagon was moving at that time, the evidence indicated the victim was in a sitting position when shot, and the fatal shots could not have been intended to scare anyone away because the two men (Stanley Cherry and Allen Oliver) were already running away. We agree.

Unless some credible evidence in the record exists which would reduce murder to manslaughter, defendant is not entitled to have an involuntary manslaughter instruction given to the jury (*People v. Ward* (1984), 101 Ill. 2d 443, 451, 463 N.E.2d 696; *People v. Austin* (1990), 207 Ill. App. 3d 896, 899, 566 N.E.2d 492; *People v. Robinson* (1987), 163 Ill. App. 3d 754, 778, 516 N.E.2d 1292; *People v. Santiago* (1982), 108 Ill. App. 3d 787, 802, 439 N.E.2d 984), although only the "slightest amount of evidence in the record" which justifies the underlying theory is sufficient to warrant the instruction (*People v. Garcia* (1988), 169 Ill. App. 3d 618, 620, 523 N.E.2d 992).

The offenses of murder and involuntary manslaughter are distinguished only in terms of the mental state required. The Criminal Code of 1961 defines "murder" as follows:

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1.)

The statute distinguishes the offense of involuntary manslaughter:

"(a) A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts *** are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).)

Accordingly, murder requires the intent to kill or do great bodily harm or knowledge that the acts create a strong probability of such result while involuntary manslaughter requires only reckless conduct which causes death. *Austin*, 207 Ill. App. 3d at 898-99.

The Criminal Code of 1961 further defines "recklessness":

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Ill. Rev. Stat. 1985, ch. 38, par. 4—6.

Intentionally and deliberately aiming and firing a gun is not mere recklessness. *Robinson*, 163 Ill. App. 3d at 779, citing *People v. DeMumbree* (1981), 98 Ill. App. 3d 22, 25, 424 N.E.2d 73 (the evidence showed that the defendant had intentionally fired three shots in the directions of various people); *People v. Burnette* (1981), 97 Ill. App. 3d 1015, 1019-20, 423 N.E.2d 1193 ("[i]t cannot be concluded that the act of deliberately firing into a crowd is merely reckless").

A defendant's assertion that he did not intend to kill anyone is not a sufficient basis to warrant an involuntary manslaughter instruction where the defendant intended to fire a gun, pointed it, and shot in the victim's general direction. (*People v. Cannon* (1971),

49 Ill. 2d 162, 273 N.E.2d 829.) These acts, "done voluntarily and wilfully, [are] sufficient evidence of the intent requisite to constitute the offense of murder." *Cannon*, 49 Ill. 2d at 166.

Defendant relies on the *Santiago* case, which involved an ongoing fight between rival gangs when the defendant fired three shots into an empty car in an attempt to ignite the gas tank, creating a diversion in order to protect his friends who were engaged in the fight. The *Santiago* court specifically found that there was no evidence that anyone was in or near the car when the defendant fired and the likelihood of injury or death was more remote since the car was unoccupied. *Santiago*, 108 Ill. App. 3d at 803.

■ In contrast, the testimony in the present case established that after defendant fired the first nonfatal shot, the station wagon began to move away, clearly indicating that it was occupied. Even if we accept defendant's contention that he first fired to scare Stanley Cherry and Allen Oliver, his purpose was served since Stanley Cherry and Allen Oliver immediately began to run away. The subsequent shots, one of which fatally wounded the victim, were fired into a moving vehicle.

On the present record we conclude that the trial court did not err in refusing to instruct the jury on involuntary manslaughter.

Defendant next asserts that the cumulative effect of certain allegedly improper comments made by the State during closing and rebuttal arguments warrants reversal. Defendant acknowledges that some remarks of which he now complains were not contained in his motion for a new trial, but contends that they should be addressed under the plain error rule.

In response, the State contends that the disputed remarks which were not properly preserved in defendant's motion for a new trial have been waived and that all contested comments were proper.

■ To preserve an issue for appeal, an objection must be made at trial and raised in a post-trial motion. (*People v. Turner* (1989), 128 Ill. 2d 540, 555, 539 N.E.2d 1196.) Our examination of the record reveals that several remarks contested by defendant in his appellate brief were not properly preserved, and thus, we find these arguments are waived. Accordingly, we address only those comments which are now properly before this court.

To constitute reversible error, the remarks by the prosecutor in closing argument must be such that, without their having been made, the jury might have reached a different result. (*People v. Lewis* (1990), 198 Ill. App. 3d 976, 982, 556 N.E.2d 697.) The sub-

stance and style of closing arguments are within the discretion of the trial court and its findings will not be disturbed absent extreme error. *People v. Barnes* (1983), 117 Ill. App. 3d 965, 978, 453 N.E.2d 1371.

The first contested remark was made by the prosecutor during opening closing argument and provides in pertinent part as follows:

> "I am not emphasizing this to you to focus on Mrs. Hawkins' [mother of the victim] loss, that is her personal loss and she will have to live with it, but to a larger extent, it is our loss as well because if 17-year-old Elizabeth Cooley can be shot down on the streets of Chicago in the manner in which she was shot down, nobody is safe."

Defendant asserts that this argument impermissibly focused the jury's attention on the loss suffered by Elizabeth Cooley's family.

We do not regard these comments as objectionable. Every reference to a deceased's family does not automatically entitle a defendant to a new trial, particularly, as in the present case, when the death penalty is not imposed. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) The Illinois Supreme Court has acknowledged that common sense tells us that murder victims do not live in a vacuum and that, in most cases, they leave behind bereaved family members. *People v. Pierson* (1988), 166 Ill. App. 3d 558, 565, 519 N.E.2d 1185, quoting *Free*, 94 Ill. 2d at 415.

The second contested remark by the prosecutor was also made during opening closing argument.

> "Ladies and gentlemen, what I am going to ask you to do by your verdict is to send a message to Mr. Maldonado and others who commit violent crime on our streets, and that message is that we, the law-abiding citizens—."

The remaining disputed remarks were made by the prosecutor during rebuttal closing argument.

> "In the meantime, what's happening, he's shooting in the direction of the car and we see the back window blown out, but because of that Albert Schweitzer didn't intend to kill anybody because if he wanted to kill somebody, he would have done it when he first stepped up to them and shoved the gun in their faces. That is the most stupid argument that you have ever heard in your life, he didn't intend to kill him because when he went right up on them he didn't have the guts to blow their brains out. We didn't prove intent only because he shoots as they are fleeing, do you think that is the only

way we can really prove intent? It's ridiculous, that is the most stupid argument I have ever heard in my life—.

\* \* \*

The fact that he knew Elizabeth Cooley doesn't even matter, he didn't know anyone in that car, Cardinal Bernadine could have been in that car—."

Defendant contends that these remarks were designed only to appeal to the sympathy and emotions of the jurors and to evoke their fear.

We do not believe that these arguments by the State exceeded the bounds of propriety. A prosecutor may comment unfavorably on the defendant and the evils of crime and advocate the fearless administration of the law. (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739; *People v. Evans* (1988), 173 Ill. App. 3d 186, 208, 527 N.E.2d 448.) Moreover, parties have the right to comment on the evidence and to draw any legitimate inferences from that evidence even if such inferences are detrimental to the defendant. *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

Assuming these comments were improper either when taken individually or in the aggregate, such error would certainly not warrant reversal because we believe the comments were not of substantial magnitude when viewed in the context of the entire record and argument. *People v. Graca* (1991), 220 Ill. App. 3d 214, 221, 580 N.E.2d 1328.

Lastly, defendant asserts that the trial court abused its discretion in sentencing him to the maximum statutory term of imprisonment when viewed in the context of the nature of the offense, the evidence presented at the sentencing hearing, and defendant's youth and rehabilitative potential. Defendant was only 20 years old at the time of the offense, the father of two small children, engaged to the children's mother, had completed three years of high school, and had no prior felony convictions.

The State responds that the sentence was appropriate and argues that the sentence was within the statutory guidelines, that the judge considered the mitigating factors, and that defendant had two prior juvenile convictions for possession of a stolen motor vehicle and robbery.

Absent an abuse of discretion, a reviewing court will not disturb a sentence which falls within the statutory limits. (*People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641; *People v. Abernathy* (1989), 189 Ill. App. 3d 292, 315, 545 N.E.2d 201.) The sentencing statute applicable to defendant provided a prison term for first de-

gree murder ranging from 20 to 40 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1).) Thus, defendant received the maximum allowable sentence then in effect.

Although sentencing judges are properly vested with wide discretion to impose the penalty appropriate to the particular circumstances of each case, such discretion is not unfettered. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297, 531 N.E.2d 366.) Accordingly, Supreme Court Rule 615(b)(4) authorizes a reviewing court to reduce a sentence imposed by the trial court (107 Ill. 2d R. 615(b)(4)) where the record discloses that the trial court abused its discretion. (*O'Neal*, 125 Ill. 2d at 298.) Even if the sentence is within the statutory limitations, an abuse of discretion may be found where the sentence greatly varies with the purpose and spirit of the law. *People v. Center* (1990), 198 Ill. App. 3d 1025, 556 N.E.2d 724 (the defendant's 15-year sentence for burglary was found excessive).

A sentence imposed for the offense of murder is as amenable to the scope of an appellate court's power of reduction as any other offense. (*E.g., People v. Crews* (1969), 42 Ill. 2d 60, 66, 244 N.E.2d 593 (after noting that society is outraged by the murder of a child, the Illinois Supreme Court reversed the death penalty sentence and imposed a 20- to 35-year term of imprisonment on the defendant); *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 767, 344 N.E.2d 724 (the court reduced the penalty imposed by the trial court where the defendant was 17 years old, had no prior criminal record, was attending high school, and had the possibility of rehabilitation); *People v. Mitchell* (1973), 12 Ill. App. 3d 960, 968, 299 N.E.2d 472 (after acknowledging that the defendant's "shooting the gun into the crowd of people cannot be condoned," the court reduced the defendant's sentence where he was 20 years old at the time of the offense and had a minimal prior criminal record); *People v. Adams* (1972), 8 Ill. App. 3d 8, 13-14, 288 N.E.2d 724 (the sentence of an 18-year-old defendant who had three prior misdemeanor convictions was reduced after the court expressly "recognize[d] the heinous nature of the crime committed").) In *Crews*, the supreme court explained that "care must be taken to insure that the punishment is appropriate and just." *Crews*, 42 Ill. 2d at 66.

Our constitution dictates that "penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) The balancing of the retributive and rehabilitative purposes of punishment requires careful consideration of the nature and circumstances of the crime, the defendant's conduct in the com-

mission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education. *Center*, 198 Ill. App. 3d at 1033.

By way of comparison, we note that where the evidence revealed the murder was a planned execution (*People v. Dower* (1991), 218 Ill. App. 3d 844, 578 N.E.2d 1153; *People v. Moore* (1989), 189 Ill. App. 3d 957, 546 N.E.2d 232) or committed for money (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 522 N.E.2d 191), the imposition of the 40-year maximum sentence was found to be justified. In contrast, a 16-year term of imprisonment was upheld following convictions for attempted first degree murder and armed violence where the defendant fired six shots at two police officers in the performance of their duties from a distance of no more than four feet even though the statutory sentencing range provided for a maximum prison term of 30 years. *People v. Collier* (1992), 228 Ill. App. 3d 159, 592 N.E.2d 444.

■ We conclude that the circumstances revealed in this record do not justify the imposition of the maximum sentence allowed by statute. Consequently, as authorized by Supreme Court Rule 615(b)(4), we reduce defendant's sentence to 20 years' imprisonment.

Defendant raised an additional issue regarding two alleged notes sent to the trial judge by the jury during its deliberations. By order dated December 24, 1991, this court granted the State's motion to strike this issue and all arguments regarding it.

Affirmed as modified.

TULLY and CERDA, JJ., concur.