2020 IL App (2d) 190069-U
No. 2-19-0069
Order filed August 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-854 |
| RETAVIAN D. JEFFERSON, | ) ) | Honorable John S. Lowery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in sentencing defendant to 10 years in prison following his guilty plea to second-degree murder (provocation). The sentence was two years below the midpoint of the sentencing range, and the court gave due consideration to aggravating and mitigating factors including the seriousness of the offense, defendant's remorse, and his rehabilitative potential.

¶ 2    Defendant, Retavian D. Jefferson, appeals from the judgment of the circuit court of Winnebago County sentencing him to 10 years in prison following his guilty plea to one count of second-degree murder (720 ILCS 5/9-2(a)(1) (West 2016)). Although defendant contends that his sentence was excessive, it was not, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The factual basis for defendant's guilty plea established that defendant and two companions were involved in the shooting death of Akeem Smith. Defendant was also shot during the incident. The death of Smith was the result of an intense and sudden passion arising from Smith having shot at defendant and a companion during an attempt to exchange money for a firearm.

¶ 5      The presentence investigation report (PSI) indicated that defendant was 19 years old and had completed the 11th grade. Defendant had no GED and was not employed.

¶ 6      Defendant had no criminal history. He was placed in segregation during pretrial detention for having instigated a riot at the jail.

¶ 7      Defendant had smoked marijuana about 10 times per day and had used marijuana on the day of the incident. He denied being in a gang, but records showed that he was associated with the Blackstones gang. He admitted spending time with gang-related individuals.

¶ 8      According to defendant, he was in trouble because he did not spend time with positive people. His five-year goal was to get out of Rockford, have a family, and graduate from college.

¶ 9      The PSI stated that, although defendant had a stable family relationship, many of his family members had histories of criminality, substance abuse, and domestic violence. His mother and father did not live together. According to defendant, his stepfather provided positive support.

¶ 10      The PSI identified as positive factors defendant's stable housing, family, and his expressed desire to further his education and pursue a construction career. Risk factors were drug abuse, association with gang members, family criminal history, lack of education, and lack of work experience.

¶ 11    The following additional facts were presented at the sentencing hearing.  Sergeant Mark Sander of the Rockford Police Department was assigned to investigate the shooting death of Smith. He identified the written statement that he took from Dequawon Coble.  Coble stated that, after hearing several loud noises coming from a nearby garage, he saw his cousin, defendant, and another man exit the garage.  According to Coble, all three men were armed.

¶ 12    Detective Dewayne Beets of the Rockford Police Department also investigated the shooting.  He took a written statement from Quincy Wright, who drove Smith to the scene of the shooting.  Wright stated that Smith had gone to the scene to buy a gun from Tavious Benford. Smith was armed.  Wright saw Martaivis Harmon with a gun but did not see defendant with a gun.

¶ 13    Detective Beets also spoke to Sheila White, who lived with Coble.  White reported hearing gunshots.

¶ 14    Detective Beets identified a report from the crime lab that showed that there were .22-caliber, .380-caliber, and 9-millimeter ammunition found at the shooting scene.

¶ 15    The prosecutor read into the record Smith's mother's victim-impact statement.  The State offered no other aggravating evidence.

¶ 16    In mitigation, Reatha Patterson, defendant's mother, testified that defendant lived with her and her mother.  She described defendant as a good son who was caught in a bad situation. According to Patterson, defendant was on his way to Job Corps when the incident happened. Defendant would help around the house, including caring for his grandmother.  Defendant had told Patterson that he would like to go to school and get a job.

¶ 17    Unique Patterson, defendant's older sister, testified that she would pay defendant to babysit her two children.  Defendant would play and hang out with the children.

¶ 18    Sandy Purifoy, defendant's aunt, testified that defendant would come to the house to complete job applications, cut the grass and shovel snow, and spend time with her daughters. According to Purifoy, defendant had arranged an interview with Job Corps to better himself. Defendant also had been involved at church.

¶ 19    Dominique Patterson, defendant's older sister, testified that she saw defendant daily. He spent a lot of time with her five-year-old son. He was respectful and helped both his mother and grandmother. Defendant was very interested in Job Corps as a way to change his life. Defendant showed a genuine interest in obtaining employment and had sought Dominique's assistance with job applications.

¶ 20    Defendant, in allocution, apologized to Smith's family. He stated that he hurt for the family because a mother should never have to bury her son. He wished that the day had never happened. He did not know that his friends "were crazy enough to pull what they pulled." According to defendant, he went along only because he expected that they would be smoking marijuana. He denied knowing that his friends were armed or that they would shoot Smith. He stated that he wanted to complete his GED and work in construction.

¶ 21    In imposing sentence, the trial court stated that it had considered the factual basis, the PSI, Smith's mother's statement, and defendant's history, character, attributes, and allocution. The court also considered all mitigating and aggravating factors. The court found Sergeant Sander, Detective Beets, and defendant's witnesses all credible.

¶ 22    The trial court noted that it was attaching appropriate mitigating weight to the fact that defendant's witnesses all described him as a "good *** and respectful kid." The court further found defendant to have rehabilitative potential because of his young age and genuine desire to continue his education. The court noted that it considered all protective factors, *i.e.*, those that the

PSI identified as tending to reduce the likelihood of recidivism. However, the court found that the risk factors outweighed the protective factors.

¶ 23    The trial court found that there was a need to deter others from committing the same crime. The court also found that probation would deprecate the seriousness of the crime. The court considered as well the cost of incarceration.

¶ 24    The trial court sentenced defendant to 10 years' imprisonment. Defendant filed a motion to reconsider his sentence. The motion was denied, and defendant appealed. This court summarily remanded for compliance with Supreme Court Rule 604(d) (eff. July 1, 2017). See *People v. Jefferson*, No. 2-18-0099 (2018) (unpublished minute order).

¶ 25    On remand, counsel complied with Rule 604(d) and relied on the original motion to reconsider sentence. The trial court denied the motion to reconsider, and defendant filed a timely notice of appeal.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, defendant contends that his sentence was excessive because he was young, had the potential for rehabilitation, lacked a criminal history, showed sincere remorse, and had limited involvement in the crime.

¶ 28    The Illinois Constitution requires that all penalties be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. 1, § 11. To find a sentence that properly balances the seriousness of the crime with the defendant's rehabilitative potential, the court "must consider a number of aggravating and mitigating factors, including 'the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and

education.' " *People v. Himber*, 2020 IL App (1st) 162182, ¶ 59 (quoting *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992)). When a trial court imposes a sentence within the permitted statutory range, a reviewing court presumes that it is proper. *People v. Guerrero*, 2020 IL App (1st) 172156, ¶ 52. Generally, a reviewing court will disturb a sentence only if the trial court abused its discretion in imposing the sentence. *Guerrero*, 2020 IL App (1st) 172156, ¶ 52. A sentence within statutory limits will not be deemed excessive unless it greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Fern*, 189 Ill. 2d 48, 54 (1999). The trial court is in the best position to weigh the evidence and to assess the credibility of the witnesses. *People v. Haley*, 2011 IL App (1st) 093585, ¶ 63. A defendant's potential for rehabilitation is not given greater weight than the seriousness of the crime. *People v. Coleman*, 166 Ill. 2d 247, 261 (1995). Our supreme court has cautioned that a reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. *Guerrero*, 2020 IL App (1st) 172156, ¶ 52.

¶ 29    Here, the applicable sentencing range was 4 to 20 years in prison. See 730 ILCS 5/5-4.5-30(a) (West 2018). Defendant's 10-year prison sentence was well-within the statutory range. Thus, absent a showing that it either varied greatly from the spirit and purpose of the law, or was manifestly disproportionate to the crime, the sentence was proper.

¶ 30    The trial court stated that it considered all the mitigating and aggravating evidence. The mitigating evidence showed that defendant was 19 years old and lacked a criminal history. Several family members attested to defendant's good character and his desire to better himself through education and employment. Defendant apologized to the victim's family and expressed his desire to improve himself. The court found defendant's apology and desire for improvement to be

genuine. The court further found that, because defendant was young and genuinely desired to improve, he had rehabilitative potential.

¶ 31    On the other hand, there was significant aggravating evidence. The crime involved the shooting death of a young man. As the trial court noted, there was a need to deter others from committing the same offense. The evidence also showed that defendant was present during the shooting, and one witness told the police that he saw defendant carrying a firearm shortly after the shooting. Although another witness told the police that he did not see defendant with a firearm, the court was in the best position to determine which version to believe. See *Haley*, 2011 IL App (1st) 093585, ¶ 63. Defendant also had a history of abusing marijuana, lacked education beyond the 11th grade, and had no meaningful work experience.

¶ 32    The trial court's comments showed that it carefully and thoroughly considered both mitigating and aggravating factors. In doing so, the court acknowledged that defendant was respectful, expressed genuine remorse, and had rehabilitative potential. In striking a balance between the mitigating and aggravating evidence, the court imposed a sentence that was two years below the middle of the statutory range. That sentence did not vary from the spirit and purpose of the law, nor was it manifestly disproportionate to the crime. Thus, the court did not abuse its discretion in sentencing defendant to 10 years in prison.

¶ 33                                  III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 35    Affirmed.