THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER SIBLEY, Defendant-Appellant.

First District (4th Division)    No. 80-1038

Opinion filed November 19, 1981.

James J. Doherty, Public Defender, of Chicago (Robert T. Badesch and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Sharon Eiseman, and Kim R. Kardas, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Following a jury trial, defendant, Walter Sibley, was found guilty of attempted murder (Ill. Rev. Stat. 1977, ch. 38, par. 8—4), aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4), and armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). He was sentenced to 18 years in the Illinois Department of Corrections for attempted murder and 18 years for armed violence, said sentences to run concurrently. No sentence was imposed for the aggravated battery conviction.

On appeal, defendant raises the following issues for review: (1) whether the trial court erred in failing to instruct the jury on the lesser crime of reckless conduct; (2) whether defendant was denied a fair trial when the prosecutors, in closing arguments, distorted the ultimate issue in the case, voiced opinion as to a defense witness' credibility and commented on facts not in evidence; and (3) whether defendant's convictions for attempted murder and aggravated battery must be reversed where those convictions are based on the same conduct supporting the armed violence conviction.

We reverse.

At trial, Charles Rankin testified on November 22, 1978, he and his 8-year-old son, Martin, were at the Melody Lounge in Harvey, Illinois, where he saw defendant Sibley conversing with someone at the bar. The witness was defendant's former employee. He saw defendant leave and return with a shotgun. Defendant pointed the shotgun at him and told him to "go outside."

Rankin stated that once they were outside the lounge, Sibley asked, "Who broke in my joint? Where is my tools at? You better tell me before I blow your brains out." The witness replied, "I swear to you, I don't know nothing about your tools or anything." Defendant pointed the shotgun at Rankin's face. At that time, Martin was walking toward his father's car. Rankin indicated that when defendant looked at Martin, he grabbed the barrel of the gun, they struggled, and defendant pulled the trigger. Martin was injured. Sibley told him to take Martin to the hospital. Rankin took his son to Ingalls Hospital. Rankin stated that he never touched defendant's hand, which was on the gun during the struggle.

At the time of trial, Martin Rankin was 10 years old. Outside the presence of the jury, the trial judge conducted a competency hearing and found that Martin was competent to testify.

Martin Rankin testified that he watched Sibley point a shotgun at his father's head. After he yelled, "Daddy, daddy," defendant turned toward him. His father struggled with defendant, the shotgun discharged and he was struck in the right hip. Martin stated that defendant Sibley was the man who shot him. Over defense's objection, Martin showed the jury his injuries.

Glendora Gray, Charles Rankin's friend, testified that she was in a car with her husband in front of the Melody Lounge. She saw the struggle and saw Martin being shot. She was approximately 30 to 35 feet from Charles Rankin during the incident.

Coleman McCarthy testified that he is an investigator for the Harvey Police Department. After speaking with Mr. Rankin, he went to defendant's home but no one was there. Thirty-five minutes later, he returned to defendant's home, knocked on the door and saw movement in the house. When no one answered, he knocked the door down. Defendant, who was inside, offered no resistance and took the police to the area where the gun was recovered.

After a stipulation as to the treating physician's testimony concerning Martin's injuries, the State rested. Defendant's motion for a directed verdict was denied.

The defense's first witness was Mac Berry, defendant's brother-in-law. Berry saw defendant pointing the gun at Rankin. He told Sibley that "he shouldn't do this" because "he got a family." Defendant said, "you're

right, brother" and lowered the gun. Thereafter, Rankin grabbed the gun and the two began to struggle. Berry indicated that he saw Martin fall after being shot.

Defendant Sibley, testifying in his own behalf, stated that he was self-employed, restoring custom and antique automobiles. On November 22, 1978, he went to the Melody Lounge to have a beer before meeting his wife at the Illinois Central Railroad station. As he walked past Rankin, Rankin made a comment to him. Defendant went to the back of the tavern, saw a shotgun and picked it up, deciding he would "put a scare into Mr. Rankin.". He had never seen the gun before and did not know how to use it. Defendant approached Rankin, showed him the gun and told him to step outside. Rankin admitted taking Sibley's tools. Defendant did not threaten Rankin.

Sibley stated that once outside, Berry said to him, "It's not worth it" and to consider his family. He lowered the weapon and Rankin grabbed the front of the gun, a struggle ensued and the gun discharged. Defendant explained that during the struggle there was a waving of the gun, backward, forward, down and around. He saw Martin had been shot and told Rankin to take his son to the hospital. Sibley stated that he never intended to shoot or harm Rankin; he only wanted to scare him. According to Sibley, he did not "pump" the gun to put a shell in the chamber. Later, at home, defendant was about to open his front door when the police kicked it down.

In rebuttal, the prosecution recalled Investigator McCarthy, who stated that he spoke with several persons at the Melody Lounge on the night of the shooting. McCarthy did not see Berry that evening.

Calvin Gray, husband of Glendora, testified that the gun was pointed at Rankin's face and not at his stomach as stated by defendant. He did not see Berry that evening at the Melody Lounge.

During the instruction conference, the trial judge denied a defense request to instruct the jury on the charge of reckless conduct. After closing argument, the jury was instructed and deliberated. Defendant was found guilty on all counts. From this judgment, defendant appeals.

Defendant contends the trial court erred in failing to instruct the jury as to the lesser crime of reckless conduct. Thus, this error resulted in the denial of defendant's right to a fair trial.

The specific issue for our determination is whether there is evidence in the record upon which the jury could have conceivably based a verdict of guilty of the lesser offense of reckless conduct. It is undisputed that a defendant is entitled to a tendered instruction as to a lesser included offense if there is any evidence fairly tending to bear upon it. (*People v. Harris* (1980), 90 Ill. App. 3d 703, 705, 413 N.E.2d 499, 501.) We have held that a gun is a deadly weapon capable of killing another, and that

handling a gun improperly may be reckless conduct. *People v. Perry* (1974), 19 Ill. App. 3d 254, 258, 311 N.E.2d 341, 344.

Section 12—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—5) defines reckless conduct as follows:

> "A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful."

Section 4—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 4—6) defines the term, "recklessness" as follows:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

In the case at bar, the evidence established that defendant and Charles Rankin struggled over the gun and, during this struggle, the gun discharged injuring Martin. The testimony concerning the struggle, if believed by the jury, was sufficient to create an issue of fact as to whether defendant acted "recklessly."

We believe the jury could have determined from the evidence that defendant's conduct was such as could constitute a gross deviation from the standard of care which a reasonable person would exercise in the situation. In a jury trial, it is the province of the jury to determine the guilt or innocence of the accused, and also to determine whether the accused is guilty of aggravated battery or the lesser crime of reckless conduct if there is any evidence which tends to prove the lesser rather than the greater crime. (*People v. Perry* (1974), 19 Ill. App. 3d 254, 258, 311 N.E.2d 341, 345.) In the instant case, there was evidence which, if believed, tended to prove reckless conduct.

We conclude that the trial court erred in refusing the tendered instruction of the lesser included offense of reckless conduct.

Because the case must be reversed and remanded, we will not reach the other issues.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new trial.

Reversed and remanded.

ROMITI, P. J., and JIGANTI, J., concur.