FIFTH DIVISION

                                                                 July 24, 1998

No. 1-97-0495

THE PEOPLE OF THE STATE OF ILLINOIS,     )         Appeal from

                                         )      the Circuit Court

          Plaintiff-Appellee,            )       of Cook County.

                                        )

     v.                                  )       No. 86-C6-60369

                                         )

JOSE CASTILLO,                           )          Honorable

                                         )     John A. Wasilewski,

          Defendant-Appellant.           )       Judge Presiding.

     JUSTICE THEIS delivered the opinion of the court:

     Defendant, Jose Castillo, was charged by information with two

counts of murder and one count of armed violence (Ill. Rev. Stat.

1983, ch. 38, pars. 9-1(a)(1),(a)(2), 33A-2) for the death of David

Flores, which occurred on May 11, 1986.  Defendant fled Illinois and

was extradited from Texas in 1995.  Following a jury trial, defendant

was convicted of murder.  The court sentenced defendant to 27 years'

imprisonment, with credit for 430 days served and the sentence to run

concurrently with a nine-year sentence for violation of bail bond on

the murder charge.  Defendant filed a late notice of appeal, which was

allowed by the appellate court.  On appeal, defendant asserts two

trial errors:  (1) the circuit court erred by refusing to provide an

involuntary manslaughter instruction to the jury; and (2) the court

erred in its determination that defendant knowingly waived his right

to submit a voluntary manslaughter instruction given defendant's

language barrier.  For the following reasons, we affirm.

     The trial began September 11, 1996.  After opening arguments, the

State and the defense entered stipulations regarding pathology and

forensic evidence.  The parties stipulated that David Flores' death

was caused by a gunshot wound to the chest and there was no evidence

of close-range firing of the gun.  

     The State then called three eyewitnesses.  Betty Lou Watts, then

known as Betty Helmar (Watts), testified that on May 10, 1986, she

went to Jose's Bar, located in Chicago Heights, Illinois, to meet

David Flores.  Around one o'clock that next morning, a man, whom Watts

identified in court as defendant, approached Flores.  The two men

began arguing in Spanish and ended up in a scuffle.  After others

broke up the fight, the bar owner asked defendant to leave the bar.

     Soon thereafter, Watts and Flores prepared to leave the bar. 

When they got outside, Flores told Watts to go home with some friends. 

Flores then went to the parking lot because defendant had called him

out there.  According to Watts, the two again started scuffling and

wrestling on the ground.  While they were wrestling, Watts turned her

head to speak to someone.  Watts next heard a gunshot and, when she

turned back around, Watts saw Flores on the ground and defendant, at

least 10 feet away, pointing the gun at Flores.  Defendant then shot a

second time.  Watts ran over to shield Flores and told defendant not

to shoot Flores anymore.  Defendant dropped his hand down and ran

toward the alley.

     The State then called Augustine Falcon, who was 16 years old at

the time and a member of the band playing at Jose's Bar that evening. 

In the early morning hours of May 11, 1986, Falcon observed an

argument between defendant and Flores in which the two were yelling

and pushing each other.  After the fight was broken up, Falcon saw

defendant walk outside.  After one minute passed, defendant returned

to the bar and said to Flores in Spanish, "[L]et's settle this." 

Flores responded, "[L]et's go."  Defendant walked out the door and

Flores followed.

     Falcon, along with other bar patrons, walked outside and observed

defendant with his arm out and a gun in his hand.  Flores was

standing, with his arms to his side, about 10 to 15 feet in front of

defendant.  Falcon then saw defendant shoot Flores twice, one shot

right after the other.  After the two shots were fired, Flores fell

and Watts ran over and covered Flores with her body.  Falcon then saw

defendant run toward the alley, and Falcon ran back into the bar to

see if anyone had called the police.  Falcon further testified that he

had seen Flores and defendant at parties and drinking together

numerous times.

     Joy Franklin, a bartender at Jose's Bar, corroborated the fight

in the bar between defendant and Flores.  Franklin testified that,

after the fight was broken up, defendant left the bar but returned a

minute or two later and waved someone outside.  Franklin did not go

outside and the next thing she knew she heard two gunshots, one right

after the other.  Franklin prepared to leave with her friend and

defendant's cousin, Julianna Castillo, when Falcon came into the bar

and said someone had been shot.

     The two women went to Franklin's car.  As they were driving past

the alley, Franklin heard a whistle.  Franklin recognized Nowie Torrez

and defendant coming from the alley and the two men ran and got into

Franklin's car.  Franklin testified that, when defendant got into the

back seat, she saw a gun in the waist part of his pants.  Defendant

told Franklin to take him to Chicago and she responded that she would

take defendant to his brother's.  Shortly thereafter, they were

stopped by the police.  The State then rested its case in chief.

     Defense counsel called two investigators who testified to prior

inconsistent statements by Augustine Falcon and Betty Watts. 

Defendant then testified on his own behalf.  On the night of May 11,

1986, defendant went with his friend, nicknamed "El Machine," to

Jose's Bar.  Defendant was having a beer at the bar when Flores

approached and said he wanted to fight defendant.  Defendant had seen

Flores before but was not acquainted with him, and the two had never

had a drink together.  Defendant smelled alcohol on Flores' breath. 

When defendant told Flores that he must have mistaken defendant for

someone else, Flores hit defendant in the shoulder.  Defendant did not

hit back but simply left the bar.  

     As defendant was going to his car, Flores "got to [defendant]" in

the parking lot and pushed defendant's shoulder again.  The men again

started to struggle when defendant noticed Flores had a small gun. 

Defendant then testified as follows:

               "Q.  What did you do when he pointed [the gun]

          at you?

               A.  I grabbed his hand.

               Q.  When you grabbed his hand, what happened

          then?

               A.  One shot fired.

               Q.  Who fired that shot, you or the other man?

               A.  The guy with the gun in his hand.

               Q.  What happened after he fired the shot?

               A.  I grabbed the hand like this (indicating)

          and I took the gun away from him.

               Q.  Did you actually take the gun from him? 

          Did you disarm him?

               A.  Yes.

               Q.  What happened after you disarmed the man

          that took the shot at you?

               A.  He grabbed my hand and he pulled it and

          another shot fired.

               Q.  Now, when he pulled your hand, did you

          ever try to pull your hand away from him?

               A.  No."

     Flores ripped defendant's shirt and then fell to the ground. 

Defense counsel introduced defendant's ripped shirt into evidence and

defendant demonstrated the struggle for the jury.  Defendant testified

that he neither aimed the gun at Flores nor intentionally pulled the

trigger to shoot him.  After Flores fell, defendant stood surprised

for a moment.  Then defendant walked away with the gun still in hand. 

Defendant kept the gun because he was afraid the patrons who had

exited the bar might shoot him if he left the gun behind. 

     Defendant did not return to his car because he was stunned and

scared.  Instead, defendant got into Joy Franklin's car.  Franklin,

defendant's sister-in-law, and two men were already in the car.  After

driving a few blocks, they were stopped by the police.  When the

passengers were exiting the car, the gun fell and fired.  On cross-

examination, defendant explained that his hand was two arms' lengths

away from Flores' chest when the gun went off.  Defendant also

explained that, in the car, he had given the gun to one of the other

men.  There were final stipulations regarding two bulletholes found in

doors of the transmission shop next to Jose's Bar and that the bullet

found in the transmission shop was fired from the same gun that fired

the bullet found in David Flores.  The defense then rested.  After

closing arguments and deliberations, the jury returned a guilty

verdict for murder.  The court sentenced defendant to 27 years'

imprisonment.

     On appeal, defendant first argues that the court's refusal to

give defendant's tendered jury instruction on involuntary manslaughter

deprived defendant of a fair trial.  The State counters that defendant

has waived review of this issue by failing to include it in his post

trial motion.  We agree with defendant, however, that substantial

defects in jury instructions are not waived for purposes of appeal by

the failure to make timely objections if the interests of justice so

require.  134 Ill. 2d R. 451(c); People v. Redd, 173 Ill. 2d 1, 41-42,

670 N.E.2d 583, 602 (1996).  Thus, we review defendant's claim that

the circuit court erred by failing to instruct the jury on defendant's

tendered involuntary manslaughter instruction.

     The decision to give a specific jury instruction lies within the

province of the circuit court and that decision will not be reversed

absent an abuse of discretion.  People v. Garcia, 165 Ill. 2d 409,

432, 651 N.E.2d 100, 111 (1995); People v. Kidd, 295 Ill. App. 3d 160,

167, 692 N.E.2d 455, 460 (1998); People v. Austin, 133 Ill. 2d 118,

124, 549 N.E.2d 331, 333-34 (1989) (voluntary manslaughter instruction

within discretion of the trial court).  An involuntary manslaughter

instruction should be given when there is some credible evidence in

the record that would reduce the crime of first-degree murder to

involuntary manslaughter.  People v. DiVincenzo, No. 82942, slip op.

at 6 (June 18, 1998).  "Where some evidence supports the instruction,

the circuit court's failure to give the instruction constitutes an

abuse of discretion."  DiVincenzo, No. 82942, slip op. at 6, citing

People v. Jones, 175 Ill. 2d 126, 132, 676 N.E.2d 646, 649 (1997). 

     Whether an involuntary manslaughter instruction is warranted in

any given case turns on the particular facts and circumstances. 

Involuntary manslaughter requires a less culpable mental state than

first-degree murder.  DiVincenzo, No. 82942, slip op. at 6.  Under the

relevant provisions of the Illinois Criminal Code of 1961, as they

existed in 1983, murder required proof that defendant intended to kill

or do great bodily harm, or knew that such acts created a strong

probability of death or great bodily harm.  Ill. Rev. Stat. 1983, ch.

38, pars. 9-1(a)(1), (a)(2).  In contrast, involuntary manslaughter

required proof that defendant's actions, though not intended to kill

an individual, were nevertheless likely to cause death or great bodily

harm to some individual and were performed recklessly.  Ill. Rev.

Stat. 1983, ch. 38, par. 9-3(a).

     According to defendant's account, Flores drew a gun and pointed

it at defendant.  Defendant grabbed Flores' hand and one shot went

off.  Defendant then wrested the gun away from Flores.  Flores then

grabbed defendant's hand and a second shot fired.  During the

instructions conference, defense counsel posited that defendant's act

of grabbing the loaded gun could be construed as reckless and thereby

warranted an involuntary manslaughter instruction.  The State

objected, arguing that, if the defendant's testimony were to be

believed, his actions would constitute self-defense or an accidental

occurrence, neither of which would warrant a recklessness instruction. 

Agreeing with the State, the court determined that, if the jury

believed the defendant's version, he would be found not guilty.  The

court decided there was no reckless act and the evidence did not

support an involuntary manslaughter instruction.

     On appeal, defendant concedes that his defense at trial was one

of self-defense.  Nevertheless, both trial and appellate counsel have

attempted to define various acts by the defendant as reckless.  While

trial counsel argued that defendant's grabbing of the loaded gun

constituted the reckless act, on appeal appellate counsel modified

defendant's position to suggest during oral argument that defendant

acted recklessly when he obtained the gun and continued to struggle

with Flores over the loaded gun. 

     Even construing defendant's version of the events in the light

most favorable to defendant, we agree with the circuit court's

determination that defendant's acts cannot be construed as even slight

evidence of recklessness.  Factually, this case is distinguishable

from other cases in which the defendant was entitled to a recklessness

instruction when defendant introduced a gun into the argument, pointed

the loaded gun at another, and then the gun was discharged after a

struggle.  People v. Roberts, 265 Ill. App. 3d 400, 403, 638 N.E.2d

359, 361 (1994) (defendant drew a gun from jacket pocket and victim

was shot during the ensuing struggle); People v. Austin, 207 Ill. App.

3d 896, 898, 566 N.E.2d 492, 493 (1990) (on remand, defendant entitled

to involuntary manslaughter instruction when gun she drew and held on

bus driver fired and killed bus driver during struggle); People v.

Consago, 170 Ill. App. 3d 982, 986, 524 N.E.2d 989, 992 (1988)

(defendant drew a gun from desk drawer and victim killed by bullet as

she reached for the gun); People v. Sibley, 101 Ill. App. 3d 953, 956,

428 N.E.2d 1143, 1145 (1981) (defendant, who had drawn gun and held it

on father, shot boy when struggling with boy's father).  In those

cases, defendant was entitled to an involuntary manslaughter

instruction because defendant's actions as the initial aggressor could

be construed as reckless.

     Here, the trial court properly refused to give an involuntary

manslaughter instruction to the jury as the facts did not support a

conclusion of reckless conduct by the defendant.  According to

defendant's version, Flores was the initial aggressor in both the bar

and parking lot encounters.  In the parking lot encounter, defendant

intentionally obtained the gun in an attempt to protect himself. 

Moreover, defendant's continued struggle over the loaded gun merely

continued defendant's intentional defense of self.  The court

correctly determined that defendant's version supported either a

murder conviction or a finding of not guilty.

     The second and final issue on appeal is whether the circuit court

properly determined that defendant, given his language barrier,

knowingly waived his right to submit a voluntary manslaughter

instruction.  Again, the State argues defendant waived review of this

issue because it was not included in defendant's post trial motion. 

And again, defendant requests plain-error review of the instruction

issue.  134 Ill. 2d R. 451(c); People v. Redd, 173 Ill. 2d 1, 41-42,

670 N.E.2d 583, 602 (1996).

     We begin by noting the distinction between waiver of a

defendant's right and defendant's exercise of his decision not to

pursue an available trial "strategy."  Certain trial decisions belong

solely to defendants, among them, whether to appeal, what plea to

enter, whether to waive a jury trial, and whether to testify.  People

v. Brocksmith, 162 Ill. 2d 224, 227, 642 N.E.2d 1230, 1232 (1994),

citing People v. Ramey, 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281

(1992).  The decision to tender an instruction on a lesser-included

offense also belongs to defendant rather than to defense counsel. 

Brocksmith, 162 Ill. 2d at 229, 642 N.E.2d at 1232.  Not all such

trial decisions are treated equally, however.  

     In People v. Smith, 176 Ill. 2d 217, 234-35, 680 N.E.2d 291, 303

(1997), our supreme court explained that, while the trial court may be

required by rule or statute to advise defendants of certain rights or

to document an on-the-record waiver of those rights, other trial

decisions by defendants do not require such scrutiny.  In particular,

while valid jury waivers and voluntary guilty pleas require certain

court admonishments, the Smith court determined that a defendant's

decision on whether to testify does not require the circuit court's

scrutiny.  Smith, 176 Ill. 2d at 234, 680 N.E.2d at 302-03, citing 725

ILCS 5/103-6 (jury waiver), 113-4(c) (voluntary guilty plea) (West

1994).  Thus, the circuit court "is not required to advise a defendant

of his right to testify, to inquire whether he knowingly and

intelligently waived that right, or to set of record defendant's

decision on this matter."  Smith, 176 Ill. 2d at 235, 680 N.E.2d at

303.

     We find the reasoning of Smith equally applicable to a

defendant's decision regarding whether to submit an instruction on a

lesser-included offense to the jury.  See People v. Gramc, 271 Ill.

App. 3d 282, 289-90, 647 N.E.2d 1052, 1057 (1995).  Consequently, we

find that the circuit court is not required to advise a defendant of

the right to make that decision, to inquire whether the defendant

knowingly and intelligently waived that decision, or to set of record

the defendant's decision on the matter.  See Smith, 176 Ill. 2d at

235, 680 N.E.2d at 303.

     In this case, however, the circuit court endeavored to set of

record defendant's decision to forego a voluntary manslaughter

instruction.  Thus, we have been asked to review the court's

determination of whether defendant exercised that decision in an

informed manner.  In conducting that review, we find that defendant's

asserted confusion regarding the voluntary manslaughter instruction is

belied by the full record, which demonstrates the court's thorough

examination of defendant's decision to forego the voluntary

manslaughter instruction.  

     Before the defense rested, the court outlined to the parties the

status of the case and acknowledged the defense strategy of not

requesting a voluntary manslaughter instruction.  The court then

confirmed that intended strategy with defense counsel.  Defense

counsel indicated he had spoken with both defendant and defendant's

wife regarding whether to tender the voluntary manslaughter

instruction.  The court then questioned defendant as to whether he had

discussed the instruction with his attorney and defendant indicated he

had.  The court then reviewed at length the available sentencing

options for voluntary manslaughter versus first-degree murder. 

Afterward, the record then indicates a three-page colloquy between the

court and defendant regarding the voluntary manslaughter instruction. 

Although defendant is correct that he exhibited some confusion, that

confusion seemed to concern the logistics of the court instructing the

jury on both murder and voluntary manslaughter.  After repeating the

question and explaining defendant's choice several times, the court

determined that defendant understood the all-or-nothing strategy and

had exercised his decision to pursue that line of defense.  Upon

review of the full record, we find that the circuit court properly

determined that defendant knowingly exercised his decision to forego a

voluntary manslaughter instruction.

     In conclusion, we find no error in the circuit court's decision

not to give an involuntary manslaughter instruction or in its

determination that defendant knowingly exercised his decision to

forego a voluntary manslaughter instruction.

     Affirmed.

     HARTMAN and HOURIHANE, JJ., concur.